**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SCOTT MACKEY AND DANIEL
HERNANDEZ on behalf of themselves and
others similarly situated,

      Plaintiffs,

v.

IDT ENERGY, INC.

      Defendant.

Case No. 18-cv-6756

Honorable Elaine E. Bucklo

**DEFENDANT IDT ENERGY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO BIFURCATE INDIVIDUAL AND CLASS DISCOVERY AND TO
COMPEL ARBITRATION AND STAY PLAINTIFF DANIEL HERNANDEZ'S CLAIMS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 3

ARGUMENTS.................................................................................................................. 9

I.     PLAINTIFF HERNANDEZ SHOULD BE COMPELLED TO ARBITRATE HIS CLAIMS, AND THE HERNANDEZ CLAIMS SHOULD BE STAYED ........................ 9

     A.     Legal Standard for Arbitrability of Claims.............................................. 9

     B.     The Hernandez / Fluent Arbitration Provision is Enforceable.............................. 11

     C.     Hernandez's February 11, 2019 Declaration .......................................... 15

     D.     This Court Should Find, as a Matter of Law,  That the Arbitration Agreement is Enforceable............................................................................... 15

     E.     Even if Hernandez's Claim is Not Sent to Arbitration it Will Likely Be Subject to An Early Motion for Summary Judgment on Consent and Jurisdiction Grounds ......................................................................... 17

II.    INDIVIDUAL DISCOVERY OF PLAINTIFFS' CLAIMS SHOULD BE BIFURCATED FROM CLASS DISCOVERY ................................................................ 18

     A.     Bifurcation is Appropriate Because a Determination of Gating Issues Relating to Hernandez and Mackey Will Substantially Streamline this Case ...... 18

## TABLE OF AUTHORITIES

**Cases**

*Adams v. City of Chicago,*
No. 06 CV 4856, 2012 WL 13060050 (N.D. Ill. Nov. 2, 2012) ................................................ 19

*ADP, LLC v. Lynch,*
Civ. Nos. 2:16-01053, 2016 WL 3574328 (D.N.J. June 30, 2016) .......................................... 12

*Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn,*
410 N.J. Super. 510, 983 A.2d 604 (2009) .............................................................................. 11

*Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.,*
347 F.3d 665 (7th Cir. 2003) ................................................................................................... 16

*Am. Nurses Ass'n. v. State of Ill.,*
No. 84 C 4451, 1986 WL 10382 (N.D.Ill. Sept.12, 1986)....................................................... 18

*Anand v. Heath, et al.,*
No. 19-CV-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019).................................. 2, 16, 17

*Atalese v. U.S. Legal Servs. Grp., L.P.,*
219 N.J. 430, 99 A.3d 306 (2014) ........................................................................................... 11

*Beture v. Samsung Elecs. Am., Inc.,*
Civil Action No. 17-5757, 2018 WL 4621586 (D.N.J. July 18, 2018) .................................... 13

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,*
137 S.Ct. 1773, 198 L.Ed.2d 395 (2017)............................................................................. 2, 17

*Burcham v. Expedia, Inc.,*
No. 4:07CV1963 CDP, 2009 WL 586513 (E.D. Mo. Mar. 6, 2009)........................................ 14

*Camreta v. Greene,*
563 U.S. 692 (2011).................................................................................................................. 16

*Christian v. Generation Mortg. Co.,*
No. 12 C 5336, 2013 WL 2151681 (N.D. Ill. May 16, 2013) .................................................. 18

*Cont'l Cas. Co. v. Am. Nat. Ins. Co.,*
417 F.3d 727 (7th Cir. 2005) ................................................................................................... 10

*Cullinane v. Uber Techs., Inc.,*
893 F.3d 53 (1st Cir. 2018)...................................................................................................... 13

*Davis v. Dell, Inc.,*
Civil No. 07-630-RBK-AMD, 2007 WL 4623030 (D.N.J. Dec. 28, 2007) ............................ 14

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................................ 10

*Dietz v. Bouldin*,
   136 S. Ct. 1885, 195 L. Ed. 2d 161 (2016) ............................................................. 18

*Elrod v. City of Chicago*,
   No. 06 C 2505, 2007 WL 3241352 (N.D. Ill. Nov. 1, 2007) .................................... 19

*Erickson v. Baxter Healthcare, Inc.*,
   94 F. Supp. 2d 907 (N.D. Ill. 2000) ........................................................................ 10

*Garvey v. Am. Bankers Ins. Co. of Fla.*,
   No. 17-CV-986, 2019 WL 2076288 (N.D. Ill. May 10, 2019) ............................ 2, 17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524, 202 L. Ed. 2d 480 (2019) ............................................................... 11

*Holdbrook Pediatric Dental, LLC v. Pro Computer Serv., LLC*,
   Civil No. 14-6115, 2015 WL 4476017 (D.N.J. July 21, 2015) ............................... 11

*James v. Glob. TelLink Corp.*,
   No. 13-4989, 2016 WL 589676 (D.N.J. Feb. 11, 2016) ..................................... 10, 16

*Jurcev v. Cent. Cmty. Hosp.*,
   7 F.3d 618 (7th Cir. 1993) ....................................................................................... 18

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
   174 F.3d 907 (7th Cir. 1999) ..................................................................................... 9

*Lindsey v. Orlando*,
   232 F. Supp. 3d 1027 (N.D. Ill. 2017) ..................................................................... 18

*Lopez v. Terra's Kitchen, LLC*,
   331 F. Supp. 3d 1092 (S.D. Cal. 2018) .................................................................... 13

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ....................................................................................... 13

*Moriarty v. LSC Ill. Corp.*,
   No. 98 C 7997, 1999 WL 1270711 (N.D.Ill.Dec.29, 1999) ..................................... 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ..................................................................................................... 10

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1177 (9th Cir. 2014) .................................................................................. 16

iii

*Nicosia v. Amazon.com, Inc.*,
   14-CV-4513, 2019 WL 2482674 (E.D.N.Y. June 14, 2019) .................................................... 12

*Noble v. Samsung Elecs. Am.*, Inc,
   682 F. App'x 113 (3d Cir. 2017) ............................................................................................. 17

*Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*,
   No. 02 C 2523, 2004 WL 609326 (N.D. Ill. Mar. 23, 2004) .................................................. 19

*Paper Express, Ltd. v. Pfankuch Maschinen GmbH*,
   972 F.2d 753 (7th Cir. 1992) .................................................................................................. 12

*Pfizer, Inc. v. Novopharm Ltd.*,
   No. 00 C 1475, 2000 WL 1847604 (N.D. Ill. Dec. 13, 2000) ................................................ 19

*Plummer v. Chicago Journeyman Plumbers' Local Union No. 130, U. A.*,
   77 F.R.D. 399 (N.D. Ill. 1977)................................................................................................. 19

*Priority Records, Inc. v. Bridgeport Music, Inc.*,
   907 F.Supp. 725 (S.D.N.Y.1995) ........................................................................................... 18

*Rent–A–Center, W., Inc. v. Jackson*,
   561 U.S. 63, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010).......................................................... 11

*Silverman v. Move Inc., et. al.*,
   Case No. 18-CV-05919, 2019 WL 2579343 (N.D. Cal. June 24, 2019) ................................. 12

*Singh v. Uber Techs. Inc.*,
   235 F. Supp. 3d 656 (D.N.J. 2017) ......................................................................................... 12

*Spinozzi v. ITT Sheraton Corp.*,
   174 F.3d 842 (7th Cir. 1999) .................................................................................................. 10

*State ex rel. U-Haul Co. of W. Virginia v. Zakaib*,
   232 W. Va. 432, 752 S.E.2d 586 (2013).................................................................................. 13

*Van Tassell v. United Mktg. Grp., LLC*,
   795 F. Supp. 2d 770 (N.D. Ill. 2011) ...................................................................................... 14

*Weichert Co. Realtors v. Ryan*,
   128 N.J. 427, 608 A.2d 280 (N.J. 1992).................................................................................. 11

*Zabokritsky v. JetSmarter, Inc.*,
   Civil Action No. 19-273, 2019 WL 2563738 (E.D. Pa. June 20, 2019)................................... 12

iv

**Other Authorities**

18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d] (3d ed.2011) .................................. 16

9 U.S.C. § 2 ........................................................................................................................ 9

9 U.S.C. § 3 ....................................................................................................................... 10

9 U.S.C. § 4 ....................................................................................................................... 9, 10

**INTRODUCTION**

This is a TCPA case in which two individuals, Plaintiffs Daniel Hernandez and Scott Mackey, seek to represent a putative nationwide class of individuals allegedly called by IDT Energy, Inc. ("IDT"), or its third-party marketers, on their cell phones or residential telephone lines since October 2014. There is, however, a fundamental problem with each of Plaintiffs' claims:

(i)   Hernandez affirmatively consented to being called by IDT and agreed to resolve any ensuing disputes in arbitration; and

(ii)  after six months of discovery, Plaintiff has been unable to adduce any evidence, at all, that Mackey ever received a marketing call from IDT.

With regard to Hernandez, the United States District Court for the Southern District of New York (Engelmayer, J.) has already ruled, in a miscellaneous proceeding relating to a subpoena issued by Plaintiffs in this case, that third-party marketing firm "Fluent has adduced evidence suggesting that Hernandez agreed not only to be contacted, but to arbitrate this very type of controversy." *In the Matter of a Document Subpoena Served in Mackey and Hernandez v. IDT Energy, Inc.*, 19 Misc. 29 (PAE) (SDNY) Doc. No. 13 at 12 (the "SDNY Order") (attached hereto as Ex. 1). With regard to Mackey, the lack of any evidence that IDT ever called him is consistent with internal IDT documents, from nearly three years ago, that IDT's "vendors reported that that they had searched their records but found no record of dialing Mr. Mackey's phone number." IDT_TCPA000017. It is also consistent with records that Mackey subpoenaed from Verizon, showing that Mackey did not receive any calls from IDT related phone numbers.

Against this backdrop, IDT's motion seeks the following relief:

Arbitration and Stay as to Plaintiff Hernandez.  Hernandez's claim is subject to an arbitration agreement, which specifically requires arbitration before the American Arbitration

Association, including with regard to any threshold questions raised concerning the enforceability of the arbitration provision. This Court thus should compel arbitration of Hernandez's claim and stay this litigation as to Hernandez.

IDT understands that Hernandez will contest arbitration by trying to create a fact issue regarding whether Hernandez visited the website at issue and agreed to arbitrate this claim. Hernandez will also likely rely on the recent decision by Judge Tharp in *Anand v. Heath, et al.*, 2019 WL 2716213 (N.D. Ill. June 28, 2019). *Anand* is fatal to Hernandez's TCPA claim because he (unlike the plaintiff there) affirmatively clicked "I CONFIRM" in consenting to be called by IDT. Nonetheless, we expect that Plaintiffs will rely on *Anand* to contest the enforceability of Hernandez' agreement to arbitrate. Respectfully, as shown below, that aspect of the *Anand* decision conflicts with numerous Court of Appeals and District Court decisions across jurisdictions and is not binding on this Court. Accordingly, this Court should decline to follow *Anand* and compel arbitration of Hernandez's claim.

Bifurcation of Individual and Class Discovery. Even if this Court declines to send Hernandez's claim to arbitration, given: (i) the consent and likely jurisdiction[1] issues relating to Hernandez; and (ii) the lack of any evidence that Mackey actually received any marketing call from IDT, Plaintiffs' individual claims likely will be the subject of an early motion for summary judgment. Additional discovery on the individual claims should be conducted immediately so IDT can file its anticipated dispositive motion, but the parties should not be subjected to the cost

---

[1] Plaintiffs have generally averred that "a substantial part of the wrongful acts alleged in this Complaint were committed in Illinois." Comp. at ¶ 6. To the extent discovery shows that Hernandez (a New Jersey resident) was not in Illinois when he received marketing calls from IDT, this Court will be divested of personal jurisdiction as it relates to Hernandez's claim. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017); *Garvey v. Am. Bankers Ins. Co. of Fla.*, No. 17-CV-986, 2019 WL 2076288, at *1 (N.D. Ill. May 10, 2019).

and distraction of expansive and intrusive class discovery – which, at this point, is nothing more than a fishing expedition – until after the Court determines whether either Plaintiff has any claim at all. Bifurcating the limited individual discovery relating to Plaintiffs and the expansive class discovery in this matter will create efficiencies for the Court and avoid unnecessary burden and cost for all parties without unduly prejudicing any Plaintiffs.

## **BACKGROUND**

A.      Plaintiffs' Complaint

Plaintiffs filed a putative class action Complaint on October 5, 2018. The Complaint alleges various TCPA related claims and seeks to certify two nationwide classes: (i) the Cell Phone Class consisting of all persons in the United States who IDT called on their cell phones using an automatic telephone dialing system; and (ii) the DNC Class consisting of all persons in the United States on the National Do-Not-Call Registry who received more than one call promoting IDT's goods or services in a 12-month period. Comp. ¶ 53.

The Complaint alleges personal jurisdiction over IDT because IDT "submitted to Illinois jurisdiction by registering with the Secretary of State to do business in the state" and also alleges that "a substantial part of the wrongful acts alleged in this Complaint were committed in Illinois." *Id.* ¶ 6. In its Answer, IDT denied "that it committed wrongful acts in Illinois as alleged in the Complaint." Answer ¶ 6.

The two named Plaintiffs are New Jersey resident Daniel Hernandez and Illinois resident Scott Mackey. *Id.* ¶¶ 2-3. As to Hernandez, the Complaint alleges that beginning in "March 2018, Plaintiff Hernandez received telemarketing calls on his cellular telephone, (201) 736-XXXX, from, or on behalf of, IDT Energy." *Id.* ¶ 36. The Complaint further alleges that Hernandez "did not provide prior express consent" to receive these calls. *Id.* ¶ 45. The Complaint does not specifically allege where Hernandez was physically located when he

3

received the IDT marketing calls but does allege broadly that "a substantial part of the wrongful acts alleged in this Complaint were committed in Illinois." *Id. ¶* 6.

As to Mackey, the Complaint alleges that beginning "in the fall of 2016 through early 2017, Plaintiff Mackey received telemarketing calls on his cellular telephone, (630) 699-XXXX, from, or on behalf of, IDT Energy." *Id. ¶* 23. The Complaint further alleges that Mackey "did not provide prior express consent" to receive these calls. *Id. ¶* 31. The Complaint also does not specifically allege where Mackey was located when he allegedly received the marketing calls but contains the same broad allegation that "a substantial part of the wrongful acts alleged in this Complaint were committed in Illinois." *Id. ¶* 6.

IDT filed its Answer on November 30, 2018, and served its Mandatory Initial Discovery Pilot Project Responses on December 31, 2018 ("MIDP Responses").

B.      Plaintiff Daniel Hernandez

a.      Hernandez Consents to Receive Telemarketing Calls and to Arbitrate any Claims

Discovery to date shows that IDT called Hernandez's cell phone (201-736-5900) based on marketing leads generated by Fluent, Inc. ("Fluent"), an internet-lead generation company, and that Hernandez expressly consented to be contacted by IDT on his cell phone.

Specifically, on March 27, 2018 at 6:11 p.m., an individual believed to be Hernandez, visited the website [www.consumerproductusa.com](http://www.consumerproductusa.com) and registered his name (Danny Hernandez), mailing address (193 East Albert Street, Rahway, NJ 07065), email address (peppersdan@gmail.com), date of birth (10/20/1970) and phone number (201-736-5900) to gain access to the website. Ex. 2 (Affidavit of Harshit Cokshi dated January 22, 2019) ¶¶ 6, 12. As part of the registration process, Hernandez specifically consented to be called on his cell phone by clicking on the unchecked checkbox stating "I CONFIRM," which as shown below is

4

juxtaposed next to a statement that the user "consent[s] to be called," and then clicking the Continue button.  *Id.* ¶¶ 13-15.



On that same website visit, Hernandez also agreed to the Terms and Conditions, including a broad arbitration provision that covers this dispute.  Hernandez manifested his agreement to the Terms and Conditions by clicking a button "CONTINUE," which, as shown below, was directly beneath a link to the Terms and Conditions and a clear statement that the Terms and Conditions "includes a mandatory arbitration provision."  *Id.* ¶ 8.

5



I agree to the Terms & Conditions which includes mandatory arbitration, email marketing and Privacy Policy.

The arbitration provision in the Terms and Conditions makes clear that a dispute with regard to, among other things, a telemarketing call received from IDT must be submitted "for resolution by arbitration before the American Arbitration Association ("AAA") in the county where you live." *Id.* ¶ 10. The provision goes on to incorporate the AAA Commercial Arbitration Rules and give the arbitrator "exclusive authority to resolve any dispute including any claim that all or any part of the Terms and Conditions, including this provision, are unenforceable." *Id.* Finally, the provision includes an express waiver of the parties' right to bring, join or participate as a plaintiff in a class action suit against, among others, IDT. *Id.*

      b.      The New York Proceeding

On January 7, 2019, Plaintiffs served a subpoena *duces tecum* on Fluent requesting, among other things "all calls and text messages made for IDT since January 1, 2015." Ex. 1 at 3. On January 22, 2019, Fluent commenced a miscellaneous proceeding in the Southern District of New York to quash the subpoena on procedural and burdensomeness grounds. Ex. 1 at 4. Specifically, Fluent argued that responding to the subpoena "would be unduly burdensome given (1) the prospect of compelled arbitration, (2) the fact that a class has yet to be certified, and (3) its status as a non-party." Ex. 1 at 7. In support of its motion to quash, Fluent provided an affidavit attesting to Hernandez's consent to be called as well as his agreement to arbitrate. Ex. 1 at 12. In response Plaintiffs' submitted a declaration from Hernandez stating that he "never

6

visited the website http://www.consumerproductsusa.com." Ex. 3 (Declaration of Daniel Hernandez dated February 11, 2019) ¶ 6.

On May 7, 2019, Judge Engelmayer issued an order quashing those elements of the subpoena that went beyond Hernandez's individual claims. Ex. 1 at 13. The court found that:

> The Court's judgment is that there is substantial force to Fluent's objections, to the extent that Fluent opposes producing records that are not pertinent to Hernandez's claims. In particular Fluent has adduced evidence suggesting that Hernandez agreed not only to be contacted, but to arbitrate this very type of controversy. This proof consists of an affidavit by Harshit Cokshi, a web computer system engineer employed by Fluent, attesting that data in Fluent's database reflects that Hernandez – while completing the registration form on Fluent-owned and operated website, http://www.consumerproductsusa.com – consented both to be contacted and to resolve any ensuing dispute in arbitration.

Ex. 1 at 12.

On June 4, 2019, Fluent produced to IDT documents relating specifically to Hernandez including the affidavit of Harshit Cokshi containing the relevant Terms and Conditions and arbitration provision. This motion followed.

C.    Plaintiff Scott Mackey

As disclosed in IDT's MIDP Response, during the relevant time period, all of IDT's outbound telemarketing calls in the 630 area code were conducted through a third-party marketing firm, The Power Company USA, LLC ("PCUSA"). PCUSA's records have "no record of dialing the number (630) 699-3943." Ex. 4 (Affidavit of Mark Link dated July 10, 2019) at ¶ 4.

In March, 2019, Plaintiffs subpoenaed Mackey's telephone records from Verizon, Mackey's cell service provider. Those records make clear that Mackey ever received improper telemarketing calls from IDT because his Verizon bills show no calls from the numbers (773)

897-3759 or (773) 897-3762, which are the numbers that an IDT marketing call "would be reflected on Caller ID and the telephone company phone records." Ex. 4 at ¶ 5.

That Mackey was never called by IDT is consistent with IDT's own customer service records. On September 27, 2016, Mackey "contacted IDT Energy's Customer Service Center to request to be placed on IDT Energy's Do Not Call." IDT_TCPA000016. IDT's customer service representative further contacted Mackey on October 4, 2016, to follow up on Mackey's complaint. In October 2016, IDT also sent the details of Mr. Mackey's complaint to IDT's "telemarking vendors requesting for any call history made to Mr. Mackey's phone number. The vendors reported that that they had searched their records but found no record of dialing Mr. Mackey's phone number." IDT_TCPA000017.

D.      Discovery in this Matter

Fact discovery in this matter is scheduled to conclude on October 30, 2019, and expert discovery on February 28, 2020. ECF No. 24. Dispositive motions are due May 1, 2020. *Id.* The Court did not set a schedule for briefing class certification. *Id.*

Plaintiffs have sought: (i) discovery regarding communications between IDT and Hernandez and Mackey as well as (ii) broad class discovery for records of virtually all telemarketing calls made by IDT or its third-party marketers, anywhere in the United States, since October 2014. Given the individualized, and likely dispositive, issues relating to Hernandez and Mackey's claims, IDT produced discovery responsive to the first category but objected to producing documents responsive to the broad class discovery requests. This discovery dispute is currently the subject of Plaintiffs' motion to compel dated June 14, 2019 (ECF No. 32), which was referred to Magistrate Judge Rowland (ECF No. 35).

IDT expects to conduct targeted discovery of Hernandez (to the extent his claim is not sent to arbitration) and Mackey to, among other things, establish: (i) whether Hernandez was in Illinois when he received marketing calls as suggested by Plaintiffs' allegations in the Complaint; (ii) establish that Hernandez accessed the website http://www.consumerproductsusa.com or understand how it is possible that all his personal information was correctly entered on the website without his knowledge and (iii) the factual basis for Mackey's allegations that he was called by IDT. Comp. ¶ 6 ("a substantial part of the wrongful acts alleged in this Complaint were committed in Illinois.") Once IDT conducts this discovery it expects to be in a position to file a motion for summary judgment seeking to dispose of all of the claims in this case.

## ARGUMENTS

### I. PLAINTIFF HERNANDEZ SHOULD BE COMPELLED TO ARBITRATE HIS CLAIMS, AND THE HERNANDEZ CLAIMS SHOULD BE STAYED

#### A. Legal Standard for Arbitrability of Claims

The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed with arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The court's role under the FAA is limited to, in the first instance, determining whether a valid agreement to arbitrate exists and if it does whether the agreement encompasses the dispute at issue. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). If an agreement encompassing the dispute exists, the FAA

9

requires the court to enforce the arbitration agreement in accordance with its terms. 9 U.S.C. §§ 3, 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). Furthermore, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The determination of whether a valid agreement to arbitrate exists is governed by state law principles governing contract formation. *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005). In this case, both Hernandez and IDT are New Jersey residents, and accordingly New Jersey law should apply on this issue. *See James v. Glob. TelLink Corp.*, Civ. No. 13-4989, 2016 WL 589676, at *3 (D.N.J. Feb. 11, 2016), *aff'd sub nom. James v. Glob. TelLink Corp*, 852 F.3d 262 (3d Cir. 2017). *See also Erickson v. Baxter Healthcare, Inc.*, 94 F. Supp. 2d 907, 910–11 (N.D. Ill. 2000) (to determine which state has the "most significant relationship," the court "consider[s] what sort of case it is (tort, contract, etc.) and examine[s], for each separate claim: (1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered" as well as "the interests and public policies of potentially concerned states as they relate to the transaction."); *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 846 (7th Cir. 1999) ("Whenever a legal claim, whether technically it is a contract claim or a tort claim, arises out of a voluntary relationship between injurer and victim, a court applying the *Second Restatement*'s test should ask what body of law the parties would have expected to govern an accident arising out of that relationship.").

10

Under New Jersey law an agreement to arbitrate must "be the product of mutual assent, as determined under customary principles of contract law." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 99 A.3d 306, 312–13 (2014). The acceptance necessary to manifest assent can be express or implied by the offeree's conduct. *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 608 A.2d 280, 284 (N.J. 1992). New Jersey law also recognizes that contract terms, like arbitration agreements, can be incorporated by reference if the party to be bound by the terms has "knowledge of and assented to the incorporated terms." *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 410 N.J. Super. 510, 983 A.2d 604, 617 (2009).

Parties can also agree to have threshold issues concerning the arbitration agreement – like whether a dispute is arbitrable – decided by an arbitrator through the inclusion of a delegation clause within the arbitration agreement. *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). These delegation clauses are "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70; *see Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527, 202 L. Ed. 2d 480 (2019).

B.      The Hernandez / Fluent Arbitration Provision is Enforceable

"In the internet era, when agreements are often maintained, delivered and signed in electronic form, a separate document may be incorporated through a hyperlink." *Holdbrook Pediatric Dental, LLC v. Pro Computer Serv., LLC*, Civil No. 14-6115, 2015 WL 4476017, at *4 (D.N.J. July 21, 2015). In determining whether terms and conditions of a hyperlinked agreement bind a party, courts look to whether users were provided with reasonably conspicuous notice of

11

the existence of contract terms and whether the user registered an unambiguous manifestation of assent to these terms. *Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656, 665 (D.N.J. 2017) (quotations omitted). If the online agreement "generally provides reasonable notice," the parties "will be bound by the hyperlinked-agreement, even if that party did not review the terms and conditions of the hyperlinked agreement before assenting to them." *Id.* (quoting *ADP, LLC v. Lynch*, Civ. Nos. 2:16-01053, 2016 WL 3574328 at *4 (D.N.J. June 30, 2016)). "[T]o hold otherwise would contravene the well settled principle that '[a] failure to read a contract will not excuse a party who signs it, nor will the party's ignorance of its obligation.' " *Lynch*, 2016 WL 3574328 at *5 (citing *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)).

Consistent with this legal backdrop, many courts have found that arbitration agreements incorporated through a hyperlink are enforceable or expressly refused to enforce arbitration agreements because, <u>unlike here</u>, the hyperlink was inconspicuous. For example:

- *Silverman v. Move Inc., et. al.*, Case No. 18-CV-05919, 2019 WL 2579343, at *11, 13 (N.D. Cal. June 24, 2019) (granting motion to compel hyperlinked arbitration agreement in Terms and Conditions because plaintiff had a means of knowing to what she was agreeing as distinguished from *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) in which no affirmative action was required by a website user to agree to arbitration other than use of the website).

- *Zabokritsky v. JetSmarter, Inc.*, Civil Action No. 19-273, 2019 WL 2563738, at *3–4 (E.D. Pa. June 20, 2019) (granting motion to compel arbitration where plaintiff consented to arbitrate dispute through hyperlinked Terms and Conditions containing arbitration agreement.)

- *Nicosia v. Amazon.com, Inc.*, 14-CV-4513, 2019 WL 2482674, at *10–11 (E.D.N.Y. June 14, 2019) (granting motion to compel arbitration of hyperlinked Terms and Conditions holding "[i]nquiry notice of the arbitration clause is buttressed by the first page of the sign-in flow, which contains a "Continue" button and, directly above that button, a notice that, "By clicking the **Continue** button, you acknowledge that you agree to the Amazon Mom Terms and Conditions.") (emphasis in original).

12

- *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 63–64 (1st Cir. 2018) (denying motion to compel arbitration where the hyperlink to terms of an agreement binding customers to arbitration were inconspicuous including because the "'Terms of Service & Privacy Policy' hyperlink did not have the common appearance of a hyperlink.  While not all hyperlinks need to have the same characteristics, they are 'commonly blue and underlined.'").

- *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1101 (S.D. Cal. 2018) (holding that a hyperlink "buried" at the bottom of a webpage near a "place order" button that didn't require customers to affirmatively acknowledge the agreement before proceeding with a purchase is browsewrap and insufficient to give rise to inquiry notice and bind the customer to an arbitration agreement").

- *Beture v. Samsung Elecs. Am., Inc.*, Civil Action No. 17-5757, 2018 WL 4621586, at *5 (D.N.J. July 18, 2018) (enforcing arbitration agreement involving modified browsewrap agreement in which terms were visible only via hyperlink but the user was required to affirmatively assent to the hyperlinked terms)

- *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (vacating district court's order denying defendants' motions to compel arbitration where a customer manifested his assent to Terms of Service – including arbitration.  Here, the screen had an uncluttered design and the language used ("By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY") rendered the provided notice reasonable.  The text and hyperlinks to the Terms and Conditions and Privacy Policy were directly below the registration buttons, the entire screen was visible at once, the dark print contrasted with the white background, and the hyperlinks were in blue and underlined.  Also, the notice was temporally coupled).

- *State ex rel. U-Haul Co. of W. Virginia v. Zakaib*, 232 W. Va. 432, 444, 752 S.E.2d 586, 598 (2013) (holding that lower court correctly found that an arbitration agreement was not incorporated into a contract where the pre-printed and electronic contracts insufficiently referenced the Addendum that contained the arbitration agreement, the reference to the Addendum lacked detail to ensure customers were aware of it and its terms, including the inclusion of the arbitration agreement, the Addendum looked like an advertisement rather than a contract, and a copy of the Addendum was provided to customers only after execution of another contract).  This is distinguishable from our matter as the arbitration agreement herein was not referenced in an addendum but was something to which the customer had to explicitly consent in accepting terms and conditions.

13

- *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 793 (N.D. Ill. 2011) (denying motion to compel arbitration where there was a multi-step online process to find the Conditions of Use and where the website "lacks any reference to the existence of the Conditions of Use or that they are binding on all users of the website outside of the Conditions of Use themselves.")

- *Burcham v. Expedia, Inc.*, No. 4:07CV1963 CDP, 2009 WL 586513 (E.D. Mo. Mar. 6, 2009) (enforcing agreement where user must click "continue," which was below text stating "[b]y continuing on you agree to the following terms and conditions.")

- *Davis v. Dell, Inc.*, Civil No. 07-630-RBK-AMD, 2007 WL 4623030, at \*5 (D.N.J. Dec. 28, 2007), *aff'd,* 2008 WL 3843837 (D.N.J. Aug. 15, 2008) (granting motion to compel arbitration and holding that clicking on an accept box manifested assent to a company's terms and conditions including arbitration agreement)

Although IDT is not the direct contracting party to the arbitration agreement, a non-party may compel arbitration if the relevant state contract law allows him to enforce the arbitration agreement. *Arthur Andersen, LLP v. Carlisle*, 129 S. Ct. 1896, 1903 (2009). This issue would be governed by New York law. Ex. 2 at Exhibit A (FLUENT_0017). Under New York law, a non-signatory, like IDT, can compel arbitration under the doctrine of equitable estoppel because Hernandez's claim against IDT is "'intimately found in' or "'intertwined with' the underlying obligations of the . . . agreement[] as to allow the non-signatory . . . to compel arbitration." *Denney v. BDO Seidman, LLP*, 412 F.3d 58, 70 (2d Cir. 2005) ("[A] careful review of 'the relationship among the parties, the contracts they signed . . . , and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estoped party has signed.'") (internal citations omitted). This is particularly true where, as here, IDT is expressly referenced in the related agreement. Ex. 2 at ¶ 14.

14

C.    Hernandez's February 11, 2019 Declaration

In connection with the miscellaneous proceeding in the Southern District of New York, Hernandez denied that he consented to be called and agreed to arbitrate on the ground that he never visited the referenced website nor has he consented to receive telemarketing calls. Plaintiffs' SDNY Opposition Br. at 4. In support of this claim, Hernandez provided a sworn declaration stating: "I have never visited the website http://www.consumerproductsusa.com. I never input any information to that site, nor did I authorize or instruct anyone to do so on my behalf." Ex. 3 ¶ 6.

Importantly, beyond his summary denial, Hernandez has been unable to explain how an independent computer system recorded his name, home address, email address and phone number, nor has he denied that the information recorded by Fluent's computer system is incorrect.

D.    This Court Should Find, as a Matter of Law,
      That the Arbitration Agreement is Enforceable.

There is overwhelming evidence that Hernandez visited Fluent's website and agreed to the Terms and Conditions. As set forth in the Cokshi Affidavit, Hernandez's name, email address, mailing address, date of birth and phone number were all recorded on the website. Ex. 2 ¶¶ 6, 12. Hernandez's only response has been that "he never visited the website," but Hernandez has been unable to provide any explanation – let alone a compelling one – for how his personal information, which he does not dispute, was input on the website. Ex. 3 ¶ 6. Under these circumstances, the Court can find that Hernandez visited the website and agreed to the Terms and Conditions including to arbitrate his claim. *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data*

15

*Sys. Corp.*, 347 F.3d 665, 671 (7th Cir. 2003) ("A trial to determine arbitrability is required, however, only if the issue that an evidentiary hearing would resolve is fairly contestable.").[2]

Hernandez is likely to rely on the recent decision in *Anand v. Heath, et al.*, No. 19-CV-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019), to argue that this Court should follow Judge Tharp's decision in refusing to compel arbitration under similar circumstances. Respectfully, we disagree.

As an initial matter, *Anand* is not controlling on this Court. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed.2011).). Moreover, given that both Hernandez and IDT are New Jersey residents, this Court should look to how courts in New Jersey or the Third Circuit have considered this type of agreement. In this regard, the Third Circuit's most recent articulation of the relevant standard is that "[w]hen terms are linked in obscure sections of a webpage that users are unlikely to see, courts have refused to find constructive notice. On the other hand, 'where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements.'" *James*, 852 F.3d at 267 (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1177 (9th Cir. 2014).).

Finally, consistent with the SDNY Order, *Anand* ignores the fact that the user had express notice of the mandatory arbitration provision without even needing to click on the conspicuously

---

[2] To the extent this threshold issue cannot be determined as a matter of law, this Court should, after the limited discovery discussed below, proceed to trial the question of whether Hernandez accessed the Fluent website as provided for in 9 U.S.C. § 4. *See Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1342 (S.D. Fla. 2018)

16

hyperlinked Terms and Conditions. Directly above the Continue button were the words "I agree to the Terms and Conditions **which includes mandatory arbitration**." Ex. 2 ¶ 8 (emphasis added). This is precisely the type of reasonable notice required under New Jersey contract law. *Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 116 (3d Cir. 2017) ("If the contract provides reasonable notice of this waiver-of-rights, the 'party is bound by those terms, even if he failed to read them.'").

     E.    Even if Hernandez's Claim is Not Sent to Arbitration it Will Likely Be Subject to An Early Motion for Summary Judgment on Consent and Jurisdiction Grounds

Although IDT believes this Court should compel arbitration of Hernandez's claim, should this Court decline to compel arbitration, Hernandez' claim will likely be subject to an early motion for summary judgment on consent and jurisdiction grounds. Specifically, the law (including as set forth in *Anand*) is that the computer user's consent to be called is valid. Indeed, the consent to be called is exactly the type of consent that *Anand* approves of because it "conditioned her continued navigation on the site to acceptance of the terms and conditions available through the hyperlink." *Anand*, at \*4. Additionally, should additional discovery make clear that Hernandez cannot show he was in Illinois when he received the marketing calls from IDT, IDT will have an additional basis for summary judgment on personal jurisdiction grounds. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017); *Garvey v. Am. Bankers Ins. Co. of Fla.*, 2019 WL 2076288, at \*1 (N.D. Ill. May 10, 2019).

## II. INDIVIDUAL DISCOVERY OF PLAINTIFFS' CLAIMS SHOULD BE BIFURCATED FROM CLASS DISCOVERY

### A. Bifurcation is Appropriate Because a Determination of Gating Issues Relating to Hernandez and Mackey Will Substantially Streamline this Case

"[A] district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891, 195 L. Ed. 2d 161 (2016) (quotations omitted). That discretion includes the ability to bifurcate discovery and other discovery matters which will not result "in actual and substantial prejudice to the complaining litigant." *Jurcev v. Cent. Cmty. Hosp.*, 7 F.3d 618, 627 (7th Cir. 1993); *Moriarty v. LSC Ill. Corp.*, No. 98 C 7997, 1999 WL 1270711, at *7 (N.D.Ill.Dec.29, 1999) (whether to bifurcate discovery is a matter committed to the discretion of the trial court); *Am. Nurses Ass'n. v. State of Ill.*, No. 84 C 4451, 1986 WL 10382, at *2 (N.D. Ill. Sept.12, 1986) ("[T]he decision to bifurcate discovery is within the discretion of the district court and depends on the circumstances of the individual case."); *Priority Records, Inc. v. Bridgeport Music, Inc.*, 907 F. Supp. 725, 734 (S.D.N.Y.1995) (recognizing that district court has discretion to bifurcate discovery).

"The court has broad discretion to manage litigation, and may bifurcate the litigation of separate issues or claims if bifurcation '(1) serves the interests of judicial economy or is done to prevent prejudice to a party; (2) does not unfairly prejudice the non-moving party; and (3) does not violate the Seventh Amendment.'" *Lindsey v. Orlando*, 232 F. Supp. 3d 1027, 1034 (N.D. Ill. 2017) (granting motion to bifurcate discovery) (citation omitted). Or, as the court in *Christian v. Generation Mortg. Co.* put it in granting a motion to bifurcate discovery: "Bifurcation is warranted where it promises to promote efficiency and economy without working substantial prejudice." No. 12 C 5336, 2013 WL 2151681, at *4 (N.D. Ill. May 16, 2013).

18

In *Adams v. City of Chicago*, the court granted a motion to bifurcate where it would promote "efficiency and economy and [avoid] undue prejudice" which "surpass[ed] the disadvantages, if any, averred by [the non-moving party]." No. 06 CV 4856, 2012 WL 13060050, at *4 (N.D. Ill. Nov. 2, 2012). And in *Elrod v. City of Chicago*, the court granted a motion to bifurcate discovery where doing so would "facilitate a more economical and efficient process of discovering the merits of the underlying… claim." No. 06 C 2505, 2007 WL 3241352, at *8 (N.D. Ill. Nov. 1, 2007). Furthermore, in *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, the court ordered bifurcation of discovery to "serve the goals of convenience, expedition and economy" where "risk of duplication and delay [was] minimal." No. 02 C 2523, 2004 WL 609326, at *2–3 (N.D. Ill. Mar. 23, 2004). *See also Plummer v. Chicago Journeyman Plumbers' Local Union No. 130, U. A.*, 77 F.R.D. 399, 402 (N.D. Ill. 1977) (bifurcating discovery where it was the "most efficient way to administer this… action"); *Pfizer, Inc. v. Novopharm Ltd.*, No. 00 C 1475, 2000 WL 1847604, at *4 (N.D. Ill. Dec. 13, 2000) (bifurcating issues for the purpose of discovery and trial where "the balance of conveniences" favored it and any prejudice to the non-moving party was likely to be outweighed).

Bifurcated discovery in this case is warranted because there are issues relating to Plaintiffs' individualized claims that are gating issues for purposes of both class certification and the merits of Plaintiffs' claims. These issues include: (i) whether Hernandez consented to be marketed by IDT; (ii) whether this Court has jurisdiction over Hernandez's claims; and (iii) whether Hernandez was even called by IDT. These issues can all be resolved on dispositive motions with limited additional discovery. Bifurcation of discovery into the individualized and class claims is also consistent with the SDNY Order that limited discovery to Hernandez specific documents and quashed discovery on broader class discovery. SDNY Order at 12-13. Finally,

19

bifurcation would not only not prejudice Plaintiffs it would streamline the case in a manner that allows for Plaintiffs to get a resolution of these preliminary issues as quickly as possible.

Dated:  July 10, 2019

By:  */s/ Motty Shulman*
Motty Shulman

BOIES, SCHILLER & FLEXNER LLP
Motty Shulman
mshulman@bsfllp.com
Jason Cyrulnik
jcyrulnik@bsfllp.com
333 Main Street
Armonk, NY 10504
(914) 749-8200

Bennett W. Lasko (ARDC #6196198)
LASKO LEGAL SERVICES LTD.
Two North Riverside Plaza, Suite 1850
Chicago, IL  60606
(312) 763-6290
blasko@laskolegal.com

*Counsel for Defendant IDT Energy, Inc.*